Brindley v. Lawton.

JAMES BRINDLEY, administrator,

*v.*

FANNY LAWTON.

A bill which rests on the allegation that the complainant's intestate gave a certificate of stock to the defendant in consideration for her living thereafter in illicit relations with him, and which prays for a surrender of such certificate, will be stricken out on motion, because it shows that the contract was illegal and immoral.

On motion to strike out, for scandal and impertinence.

*Mr. Woodbury D. Holt,* for the motion.

*Mr. Edwin Robert Walker* and *Mr. Garret D. W. Vroom,* contra.

BIRD, V. C.

The complainant shows that he is the administrator of John Brindley, deceased; that the decedent left a widow and three children him surviving; that at the time of his death he actually lived and cohabited with the defendant, Fanny Lawton; that the decedent was, at the time of his death, entitled to the possession and was the owner of a certificate of stock of a certain pottery, which certificate represented twenty shares of the stock of said company of the par value of $100 per share; that said certificate was afterwards ascertained to be in the possession of the defendant, Fanny Lawton, and that when the possession thereof was demanded of her by the complainant she refused to surrender the same, and claimed that it had been given to her by the said John Brindley, deceased, in his lifetime. The bill then charges

"that even if the pretence so last as aforesaid made of the said Fanny Lawton be true, that nevertheless the said gift of stock by your orator's said father to the said Fanny Lawton is absolutely null and void as being against public policy and good morals, because your orator's said father gave the said stock, if at all, to the said Fanny Lawton as an inducement to, and consideration for, her living with him thereafter in a state of adultery, and that the said Fanny Lawton, in consideration thereof, thereafter did live with your orator's said father in open adultery, and was so living with him at the time of his death."

The motion is to strike this out because it is impertinent and scandalous. Since this is the foundation of the complaint the whole structure must stand or fall with it. The allegation is that the certificate was given to her upon consideration of her submission to him in committing the crime of adultery. The gift is alleged to have been made *before* the offence against the law and good morals was committed.

Can a court of equity grant relief in such case by compelling the donee to surrender the possession of the thing given as compensation for her part in the offence? Professor Pomeroy, in speaking of contracts that are void or voidable, because of their illegal or immoral character, says:

'Among the most important and familiar illustrations are the following: Contracts based upon the consideration, either past or future, of illicit sexual

intercourse, or stipulating for such future intercourse, or in any manner promoting or furnishing opportunities for unlawful cohabitation or prostitution." *2 Pom. Spec. Perf. § 936 ; 1 Story Eq. Jur. § 296.*

That the contract presented by the bill was illegal and immoral is so declared in the bill itself.   Will the court aid either party in asking for a rescission?   The answer to this was in the negative, in the case of *Ellicott* v. *Chamberlin, 11 Stew. Eq. 604.* In that case, in order to induce the resignation of an executor, he was offered $10,000.   After the payment of $5,000 in cash and the assignment of a bond and mortgage for $1,300, a promissory note was given for the remaining $5,000.   After the payment of $2,500 on this note, an action at law was begun for the recovery of the amount due thereon.   A bill was then filed in this court presenting the whole transaction and asking that the action at law be enjoined.   The bill was dismissed by the chancellor.   An appeal was taken.   In delivering the opinion of the court of errors, Mr. Justice Pàrker used the following language: "There is no doubt that Mrs. Elliot could have successfully resisted payment of any part of the money she agreed to give Mr. Chamberlain for the renunciation of his executorship, had she interposed defence, but she chose voluntarily to pay the greater part of the money, and she cannot now recover what she has paid.   She was a participant in an illegal contract for the purpose (as the evidence shows) of obtaining for herself the administration of the estate.

"If a contract be illegal as against public policy, its invalidity will be a defence while it remains unexecuted.   If the illegal contract be in part performed and money has been paid in pursuance of it, no action will lie to recover the money back. *Sm. Cont. 259.*

"The law will not assist either party to an illegal contract, and the parties being *in pari delicto,* it will leave them where it finds them.   If the contract be still executory it will not enforce it, and if already executed it will not restore the price paid nor the property delivered. *Setter* v. *Alvey, 15 Kan. 157.*

"Mrs. Elliot cannot, therefore, compel the repayment of the money she gave Mr. Chamberlain on the agreement or on the

note, nor can she compel the assignment to her of the Yauger bond and mortgage as prayed for in her bill. To that extent the contract has been executed, but she can resist the payment of the balance of the note for which suit has been brought. Her defence to the note can, however, be made in a court of law, and therefore the suit in the circuit court, already commenced, should not be enjoined."

The bill was properly dismissed by the chancellor, without costs. *Johns* v. *Norris, 12 C. E. Gr. 485; Slocum* v. *Wooley, 16 Stew. Eq. 451.*

With these cases before me, it is needless that I should go further.

The motion to strike out must prevail, with costs.